5 How. 327–CRITICISED, 18 Barb. 332. DISTIN-
GUISHED, 7 Daly 402. FOLLOWED, 8 How. 189. OVER-
RULED, 16 Barb. 309; 11 How. 106; 23 N. Y. 264.

## SUPERIOR COURT.

### ROBERTS agt. RANDEL.

An action "to recover personal property" can not be maintained where the
defendant *has not in fact or in law the possession or control of the property
claimed.*

Consequently an order for arrest under the 3d sub. of § 179 can not be granted
in such a case (where the sheriff returns he is unable to obtain the property,
&c.)   (*This is adverse to the case of Van Neste agt. Conover, ante* 148.)

The "claim and delivery of personal property" under the Code is a substitute
for *replevin* as heretofore existed under the Revised Statutes; which was a
possessory action against personal property, or for damages for its detention;
and in its application to the disposal of property limited, to a removal of it
*made to avoid the service of the writ.*

(*In the cases of Cary vs. Hotaling and Olmsted vs. Hotaling,* 1 *Hill,* 311, 317,
*this doctrine is stated that replevin can be maintained in all cases where the
party can bring trespass de bonis asportatis.* HELD, *that this was merely an
assumption by the court, and its application to such a case as the present,
unfounded.*)

This was a case where the plaintiff delivered a Texas bond to the defendant
(as broker) to be sold at a specified amount.   The plaintiff claimed that the
defendant had disposed of it under the amount, and thereby unjustly con-
verted and detained it.   This action was for the bond itself.

*January* 1851. *Before* OAKLEY, *Ch. Justice, and* SANDFORD and
PAINE, *Justices; with the concurrence of the other three Justices,*
DUER, MASON and CAMPBELL.

This is an appeal from an order made at chambers, discharging
an order for the arrest of the defendant made under the third sub-
division of section 179 of the Code of procedure.   The defendant
had been arrested under that order, and imprisoned for default of
bail.   The action was brought, in form, for the recovery of the
possession of personal property. The plaintiff, claiming a delivery
of the property, placed in the hands of the sheriff an affidavit and a
requisition for its delivery pursuant to sections 207 and 208 of the
Code, with the proper security.   The sheriff certified that the
property had been concealed, removed or disposed of, so that he
could not find or take it.   Thereupon the justice at chambers
made the order for the defendant's arrest.   The plaintiff's affida-
vits for the delivery and for the arrest, showed that the action
was brought for the conversion of a bond of the state of Texas,

which was delivered by the plaintiff to the defendant as a broker, to sell for not less than forty per cent on the amount of principal and interest, and which the defendant, some months prior to the suit, sold for forty per cent on the amount of the principal only That the plaintiff thereupon demanded of him the bond itself, and also the amount of it at the price limited for its sale; neither of which demands was complied with by the defendant. The affidavits further alleged that the bond was obtained by the defendant with the fraudulent intent of converting it to his own use. After his arrest, the defendant offered to give to the sheriff the bail for his appearance; but the sheriff required the undertaking prescribed in section 211 of the Code.

E. FITCH SMITH, *for Plaintiff.*

D. GOULD, *for Defendant.*

By the Court, SANDFORD, Justice.—The first question arising on this appeal, is whether the plaintiff can bring an action " to recover the possession of personal property" in a case like this. By his own showing, the defendant parted with the property long before the suit was commenced; and whatever it may be called, the suit is really one to recover damages for the conversion of the property. We have examined the subject with much care and are clearly of the opinion that the plaintiff is not entitled to the remedy which he claimed and which was granted to him by the order at chambers.

That order is one of the "provisional remedies," established by the seventh title of the Code. The claim and delivery of personal property, is itself one of those provisional remedies, and the order in question is consequent upon the failure of that remedy. Arrest of the party is provided by the title cited, in five classes of cases The first class embraces, among others, actions for the recovery of damages for wrongfully taking, detaining, or converting property. This, beyond dispute, applies to the plaintiff's cause of action here. The third class is thus expressed: "In an action to recover the possession of personal property unjustly detained, where the property or any part thereof has been concealed, re-

Roberts agt. Randel.

moved or disposed of, so that it can not be found or taken by the sheriff (*Code,* §179, *subd.* 1, 3). The bail required in the first class, is for appearance to answer the process of the court, that required in the third class, is virtually for the payment of the judgment which may be recovered in the action. It is evident that in all cases arising under the third subdivision, the plaintiff may claim an arrest and bail under the first, which gives the arrest in an action for wrongfully detaining property. But to obtain the arrest and security provided by the third subdivision, besides the unjust detention, it must be shown that the property sought to be recovered has been concealed, removed or disposed of, so that it can not be found or taken by the sheriff. In this clause, we find the real distinction between the two kinds of arrest. The first is given in suits for damages, claimed for the wrongful taking or detaining of property. The second is given in suits where the party seeks the recovery of the *identical property* itself. Such a suit, in our judgment, can be brought only where the property is in the possession or under the control of the person who is made defendant. To bring an action against John Doe, to recover the possession of goods which the plaintiff knows he has long since sold and delivered to Richard Roe, is idle and unmeaning. This is made more manifest, by the clause already stated, on which the whole thing turns. The goods must have been concealed, &c., *so that* the sheriff can not take them. The words are, " *has been* removed &c. Now, although a sale of the property by the defendant, months before the suit, will have the effect to prevent the sheriff from taking the goods from him; we think it quite apparent that such was not the disposal intended by this section. If it were, there would have been no occasion to add the words, " so that it can not be found or taken by the sheriff." The provision, without those words, would have been complete to reach every case where the defendant had parted with the property illegally taken or detained. The words just quoted, were added to qualify the provision, and limit it to cases where the defendant had not only disposed of the property but had disposed of it so as, and in order, to prevent the sheriff from executing the process for its delivery;

42

which could only be after the commencement of the suit; or after the sheriff, by the receipt of the process, was entitled to make such delivery; or when made with a view to defeat expected process, which would be a disposal in fraud of the law.

To test this conclusion, let us examine the chapter entitled " claim and delivery of personal property," out of which the arrest in question arises. Section 206 enacts that in an action " to recover the possession of personal property," the plaintiff may, when he issues the summons, or at any time before answer, " claim the immediate delivery of such property," as provided in that chapter. Thus the action is to be one, not for *damages* for illegally taking, detaining or converting property, nor for the value of such property; but it is for the recovery of *the possession* of the property itself. To this end, the remedy claimed, is the delivery of the very property, which the sheriff can not do, in a suit against one who has not the thing to be delivered. This distinction between actions to recover damages for the wrongful taking or detaining goods, and actions for the recovery of specific personal property, is maintained in the judgment to be rendered as well as in process (*Code*, § 246, *subd.* 2). And if under section 206, an action to recover the possession of personal property, may be brought against one who has sold and delivered it, and has neither the possession nor the control of it; why may not an action to recover the possession of real property, or to recover real property, be brought against any person who once possessed or claimed it, though he has sold his right and parted with his possession to others? We can not see how an action can be said to be brought to recover the possession of a specific chattel, when it is brought against a party who avowedly has not the chattel, and from whom no power of the court can procure it.

To return to the Code. The affidavit to be made by the plaintiff must state, among other things, " that the property is wrongfully detained by the defendant," and the alleged cause of the detention thereof (§ 207). This assumes that the property is in the possession or control of the defendant. It is a detention, by him, existing at the time the affidavit is made; else how can the

Roberts agt. Randel.

party make oath that it *is* wrongfully detained *by the defendant*? Then in executing the process, the sheriff of the county where the property is supposed to be, is required to take it from the defendant and deliver it to the plaintiff (§ 208; and see § 211, 214). Without pursuing minutely, the details of the chapter, they all proceed upon the basis of an action against specific property, and are addressed to giving it effect against such property, in the possession of the defendant. The only provision against the defendant's person, is that already commented upon, and is given when through his act the sheriff is prevented from executing the process issued to take the property out of his possession.

Unless we are right in our interpretation of these provisions, we must hold that the legislature has provided two distinct provisional remedies, in all cases where under the former system, trespass or trover could be maintained; by one of which the defendant may be held to give the special bail of the old system, and by the other may be required to give security to pay the judgment that may be recovered in the action; and the latter remedy being so much more efficacious than the other, it will of course supersede it altogether. It is a remedy, as insisted on in this action, which in all cases of the alleged wrongful taking or detaining of personal property, will subject defendants who have disposed of the property, however innocently, to imprisonment from the commencement of the suit, until its termination, unless they can give security to pay the judgment sought; and if a judgment be recovered until they pay it, or are discharged under the insolvent laws.

We can not be induced to believe that the legislature intended to make such a harsh and violent change in the law; one so inconsistent with the other provisions for arrest contained in the same section, and so totally at variance with the whole tendency of our legislation for the last twenty years in respect to imprisonment upon civil process; and we are entirely satisfied that the provisions of the Code, construed in their plain and fair import, lead to no such result. We think the remedy contained in subdivision one of the 179th section, was designed for precisely such

cases as that of the plaintiff in this suit; and that the stringent provision in the third subdivision was intended to execute justice upon parties who should attempt to defeat the process of the court in suits to recover specific property, by putting the property out of their hands and thereby preventing its seizure by the sheriff. A history of the enactment corroborates this opinion. It appears for the first time, in the amended Code of 1849. The bail required in such a case in the Code of 1848, and in the action of replevin by the Revised Statutes, was the ordinary special bail that the person of the defendant should be amenable to the process in the action. No change in this respect, was proposed by the commissioners on practice and pleadings in 1849, and the change was made by the legislature of that year in their amendments to the Code of 1848.

We were referred by the plaintiff's counsel to the cases of Cary vs. Hotaling and Olmsted vs. Hotaling, in the late Supreme Court (1 *Hill*, 311, 317), as authority that replevin could be maintained after the party had sold and parted with the goods which he had illegally taken or detained. There is no doubt that the "claim and delivery of personal property," in the Code, was intended as a substitute for the provisional relief theretofore obtained in the action of replevin (*Report of Commissioners of Practice, &c. in* 1848, *page* 169). We have, therefore, maturely considered these authorities. The question really controverted in the first case cited, was whether trespass would lie under the circumstances; and in the second, whether a partner who had not participated in the fraud, could be made liable in tort with his guilty copartner. It was undoubtedly assumed by the judge who delivered the opinion of the court, that replevin could be maintained in all cases where the party could bring trespass *de bonis asportatis*, but he did not discuss the point, and it does not appear to have been presented. The evidence showed that the defendants had sold the goods before the suits were brought, and therefore the point existed in the cause, although it was not noticed. As the law then stood, the only arrest authorized in replevin was that now provided in the first subdivision of section 179 of the

Roberts agt. Randel.

Code, and the party could be held to bail with the same effect in trespass.    The point was therefore of no practical importance.

Was the assumption of the judge in the cases in 1st *Hill*, warranted by the law as it then existed?   Previous to the Revised Statutes replevin could not have been maintained in those cases. Although learned judges, by way of illustration, frequently said before the Revised Statutes, that replevin would lie wherever trespass could be brought, they did not intend to say that they were concurrent remedies in all cases.   Wherever trespass would lie, and the goods were possessed by the defendant, replevin could be maintained; and this was all that those judges intended to assert.   The same remark might be made as to most of the instances in which, since the revised statutes, judges have said that replevin would lie wherever the party could maintain trespass or trover.

We repeat, that before the revised statutes, there was no such thing in this state as replevin against a party, after he had entirely divested himself of the possession and control of the goods claimed; except in the single case of distress for rent where the distrainor had proceeded fraudulently or contrary to the statute permitting a replevin within five days.   (By fraud in the proceedings, we mean some act of the distrainor analagous to the driving of a distress out of the hundred or shire in England.) The action was purely possessory.   It sought the specific goods, and was fruitless unless the goods were seized, or other goods taken from the defendant *in withernam* in the excepted case just stated, as a substitute for those distrained, or the distrainor having *eloigned* the latter beyond the reach of the sheriff.   The judgment was for the property already seized and restored to the plaintiff, with damages for its detention.   There was no judgment for its value, or for any other damages.   Hence the action always ensued immediately on the taking of the property.   It was even contended, on distresses for rent (which at that period were the origin of most of the actions of replevin), that the suit could not be brought after the five days within which the tenant was permitted to make a replevy, although it were commenced before

an actual sale of the distress.    We refer, for the state of the ac-
tion before the Revised Statutes, to Co. Litt. 145, b.; Bacon's
Abr. Replevin, A.; 2 Dunlop's Pr. 872, 880; Graham's Pr. 55,
726, 1st ed.; and *Jacob vs. King*, 5 Taunt. 451.

The Revised Statutes extended the action of replevin, to cases
where the original taking of goods was lawful and they were
wrongfully detained; and it is described to "be brought for the
recovery thereof, and for the recovery of damages" for the unjust
caption or detention.    The form of the writ is prescribed thus:
"Whereas A. B. complains that C. D. has taken and does un-
justly detain (or 'does unjustly detain,' as the case may be);"
and it commanded the sheriff, on receiving security for a return
of the goods, if a return should be adjudged, &c., to replevy the
goods and deliver them to the plaintiff, and to summon the de
fendant; and if he could not find the goods, then to take the body
of the defendant &c.    The statute next prescribed the manner of
executing the writ, by delivering the possession of the property
to the plaintiff (2 *R. S.* 522, &c., § 1, 6, 8, 10).    "If the pro-
perty described in the writ, have been removed or concealed so
that the sheriff can not make the delivery thereof," he was re-
quired to arrest the defendant, who was thereupon to give bail
as in personal actions (*Ibid.* § 11, 12, 22 to 27).    This was a
substitute for the *capias in withernam* of the common law, and
was extended to all cases of replevin.    The declaration (§ 36,)
is again carefully limited to a detention existing at the com-
mencement of the suit. The whole statute, without citing it more
at large, shows that the action was still a possessory action
against personal property, extended to cases where before, even
if the goods were in the defendant's custody, trover or detinue
were the only remedies.

By the Revised Statutes several valuable changes were made
in the practice in replevin, besides the substitute of the arrest
before mentioned; among others, a judgment for the value of the
property and damages, where the plaintiff has not obtained the
goods by the replevin.    The language of the eleventh section,
before cited, taken in connection with the nature of the action

as declared by the first section and the form of the writ and the declaration, was plainly limited to a removal of the property made to avoid the service of the writ. It seems to us entirely incongruous to make the statute say, when the writ is given only for a present detention, that the party shall be arrested under it, for a disposal of the property made before it was issued. We do not intend to speak of removals in fraud of the law when a writ was expected.

The revisers in proposing the changes in replevin, say it has been extended so as to make it a substitute for *detinue*, and a concurrent remedy with trespass and trover, in all cases of the unlawful caption or detention of personal property. We suppose the latter expression was used by the revisers, in the same sense that it was before that time used by judges, in comparing replevin with trespass, as we have already mentioned. We do not imagine that the revisers intended to say that by their proposed change, replevin could be brought against the bailee of a horse, a year after he had sold the horse to a stranger. In fine, we are fully convinced, that the Revised Statutes did not warrant the bringing of replevin in a case like the one before us, and that the assumption to that effect in the cases cited from 1st *Hill*, was unfounded.

Such being our conclusion, and all agreeing that the " claim and delivery of personal property" under the code, is a substitute for replevin as it before existed; it fortifies our opinion founded upon the Code itself, that this provisional remedy can not be maintained against a party who has not in fact or in law the possession or control of the property claimed.

Some stress was laid on the addition in the Code of the words " disposed of," to the removal or concealment mentioned in the eleventh section of the Revised Statutes. We think this was intended to provide for the event of the defendant's selling or otherwise parting with the proper in fraud of the action ; as for example, after the action was commenced and before service by the sheriff. It can not be supposed that those words were designed to change the whole nature of the remedy substituted for

replevin, and to give it a scope vastly wider than its original ever had obtained.

Upon the whole, we entertain no doubt that the plaintiff has misconceived his remedy, and that an order for arrest under the third subdivision of section 179 of the Code, can not be made in a case like this.

The order appealed from must be affirmed. (*a.*)

(*a.*) The case of Van Neste agt. Conover (5 *How. Pr. R.* 148), was not known to the court until after this decision. It would not probably have affected the conclusion to which the court arrived.