# THE NORTHERN RAILWAY COMPANY of France *a.* CARPENTIER.

*Supreme Court, First District; Special Term, December,* 1856.

ARREST.—EMBEZZLEMENT OF STOCKS.—STIPULATION NOT TO SUE.

A complaint by a moneyed corporation, which shows that defendant was employed by plaintiffs as their officer or agent; that in that fiduciary capacity, he had access to the papers of plaintiffs; that by means thereof he abstracted from the possession of plaintiffs, *certificates of shares in the stock of plaintiffs' Company, which shares were owned by plaintiffs;* and that he sold the same and embezzled the proceeds;—states a cause of action upon which defendant may be arrested.

A complaint which shows that, under like circumstances, defendant abstracted from the possession of plaintiffs, *certificates of shares in the stock of plaintiffs' Company, which certificates were deposited, by the owners of them, with the Company for safe keeping;* and sold the same, &c.;—also states a cause of action upon which defendant may be arrested.

---

Where, upon vacating an order of arrest, upon the ground that, upon the whole case as presented upon the motion to vacate, there is not evidence to charge the defendant with the wrong complained of, the court is satisfied that there was no malice in causing the arrest, and that there was probable cause for procuring it,—the discharge may be granted conditionally upon the defendant's stipulating not to bring an action for the arrest.

Motion to vacate an order of arrest.

This action was brought by The Northern Railway Company of France *against* Charles Carpentier, Louis and Eugene Grelet, Auguste Parot, Felicité Dubud, and one Guerin.

The complaint set out two distinct causes of action.

The first was that the plaintiffs, being an incorporation created by the laws of the empire of France, doing business therein, had in their employ, on or about August 26, 1856, the defendants Carpentier and Louis Grelet, the former as cashier, and the latter as under-cashier;—that, as such officers, they had access to the bonds, bills, shares of stock, and other valuable things belonging to the plaintiffs, or deposited with them;—that the said Carpentier and Grelet, while acting in such fiduciary capacity, with the aid and assistance of the other defendants, abstracted

from the vaults of said plaintiffs, and sold and converted to their own use, 5,747 shares of the stock of the said plaintiffs, and converted the same into money, and with the same, or a large portion thereof, secretly departed from said empire of France and fled to the United States;—that the actual value of each share of said stock was about the sum of two hundred dollars;—and the plaintiffs claimed that, by reason of the said acts of the said defendants, they had been damnified to the sum of one million of dollars and upwards.

For a further cause of action, the plaintiffs alleged that the said Carpentier and Grelet, being such officers, and acting in such fiduciary capacity, with the aid and assistance of the other defendants, did feloniously embezzle the said .5,747 shares of stock and the coupons attached, and did unjustly detain the same, and did conceal, remove, and dispose thereof, so that the same cannot be found or taken, and did the said acts with the intent that the same should not be found or taken, and with the intent to deprive the plaintiffs of the benefit thereof.

Upon an affidavit stating these facts (the substance of which will be found stated in our report of a previous motion in the cause, 3 *Ante*, 259), an order of arrest was made, authorizing the arrest of all the defendants; and by virtue of it they were arrested, except the defendant Guerin. A motion was now made by the defendants Louis and Eugene Grelet, and Parot and Dubud, to vacate said order, on the ground that it was improvidently granted, and that the facts set forth did not authorize their arrest.

*B. Galbraith* and *John Townshend*, for the motion.—I. An order of arrest can be made only in the manner and under the circumstances prescribed by the Code, in sections 178 to 183. The order, when made, is that of an *officer*, not that of the *court;* and it is void unless all the requisites of the statute are complied with before it is issued. (Staples *v.* Fairchild, 3 *Comst.*, 46; White Lead Company *v.* Rochester, *Ib.*, 466; *Graham's Pr.*, 2 *ed.*, 141.)

II. The right to the order is independent of the right to maintain the action, or of the sufficiency of the complaint; and the complaint can be looked at, if at all, only as an item of evidence.

III. The papers in the present case do not show that a sufficient cause of action exists. The only taking alleged is a *felonious* one, and that—under the common law, which must be presumed to prevail in France, (Throop *a.* Hatch, 3 *Abbotts' Pr. R.*, 23; Livingston *v.* Jefferson, 1 *Brock.* 203; Hoyt *v.* Thompson, 1 *Seld.*, 345)—gives no right to a civil action.

IV. The cause of action shown, if any, is a tort committed by one alien towards another, and in a foreign country. No action can be maintained upon such a tort in the courts of this State. (Hastings *v.* Farmer, 4 *Comst.*, 296; Barnes *v.* Harris, *Ib.*, 379; Western *v.* Mutual Insurance Company, 2 *Kern.*, 263; Bard *v.* Poole, *Ib.*, 504; Hoyt *v.* Thompson, 1 *Seld.*, 340; Burcle *v.* Eckert, 3 *Comst.*, 136; Abraham *v.* Plestoro, 3 *Wend.*, 566; Johnson *v.* Hunt, 23 *Wend.*, 95; Oakley *v.* Morton, 1 *Kern.*, 25; Harmony *v.* Bingham, 2 *Ib.*, 107; Lysten *v.* Wright, 2 *Hill*, 320; Scoville *v.* Canfield, 14 *Johns.*, 338; Holman *v.* Johnson, *Cowper*, 343; Mostyn *v.* Fabrigas, *Ib.*, 161; 1 *Chitt. Pl.*, 268; 1 *Paine & Duer's Pr.*, 153; 2 *Kent's Comm.*, 406; Rafael *v.* Verelst, 2 *W. Bl.*, 1055; Mayor of Berwick *v.* Ewart, *Ib.*, 1068; Manly *v.* The People, 3 *Seld.*, 302; Campbell *v.* Perkins, 4 *Seld.*, 440; Smith v. Bull, 17 *Wend.*, 323; Adams *v.* The People, 1 *Comst.*, 177; Glen *v.* Hodges, 9 *Johns.*, 67; Gardner *v.* Thomas, 14 *Ib.*, 134; Johnson v. Dalton, 1 *Cow.*, 543; *Const. U. S., art.* 4, § 2; *Bill of Rights*, § 1; Hyde *v.* Goodnow, 3 *Comst.*, 266; Bristow *v.* Sequeville, 5 *Exch. R.*, 275; *Story's Confl. of Laws*, 16.)

V. The taking *from* a Company certificates of stock of the Company, cannot, in any event, constitute a cause of action. (Silsbury *v.* McCoun, 3 *Comst.*, 379; Robinson *v.* Damby, 3 *Barb.*, 20; The People *v.* Loomis, 4 *Den.*, 380; Decker *v.* Mathews, 2 *Kern.*, 319; Greene *v.* Clarke, *Ib.*, 352; 1 *Rev. Stats.*, 4 *ed.*, 1223, § 8; Todd *v.* Crookshank, 3 *Johns.*, 432.)

VI. The complaint is too indefinite and uncertain. 1. It should state, definitely, whether the shares were the property of plaintiffs, or were only deposited with them for safe keeping. 2. It should also refer to the law by which plaintiffs were incorporated. (2 *Rev. Stats.*, 699, § 11; Onondaga Bank *v.* Carr, 17 *Wend.*, 444; Holyoke Bank *v.* Haskins, 4 *Sandf.*, 675.)

*J. Morrogh, F. R. Tillou,* and *John McKeon,* opposed.

DAVIES, J.—The motion in this case has been most elaborately and ably argued, and the magnitude of the amount involved, and the very general attention which the case has attracted, have led me to a more careful consideration of the case, and a more critical examination of the numerous authorities cited, than is usual in motions of this character.

A motion has heretofore been made in this cause for the discharge of the defendant Felicité Dubud, on the ground that she being a female, could not be arrested for the matters complained of. This court held on argument that the facts showed that the acts complained of were a wilful injury to property, and such as authorized the arrest of a female under subdivision 5 of section 179 of the Code.

It is now contended, on the behalf of the defendants making this motion, that the plaintiffs have sustained no damage by their acts, and that, therefore, no cause of action exists against them. This argument concedes the truth of the allegations of the complaint.

Subdivision 1 of section 179 of the Code, declares that the defendant may be arrested in an action for the recovery of damages for wrongfully taking, detaining, or converting property. Subdivision 2 of the same section authorizes the arrest of a party in an action for property embezzled or fraudulently misapplied by any officer or agent of a corporation, in the course of his employment as such, or by any agent or other person acting in a fiduciary capacity.

By their argument the defendants admit the taking, detention, and conversion, as alleged in the complaint; and the defendant, Louis Grelet, admits that while acting in this fiduciary capacity, he took and converted to his own use the shares of the stock of the plaintiffs, with the coupons attached, and sold and disposed of the same, and received the proceeds thereof. The plaintiffs allege that these shares of stock thus taken belonged to them, or were deposited with them for safe keeping. If the shares belonged to the plaintiffs—if they were the plaintiffs' property, as they allege—I am unable to see why the taking, detention, and conversion, and the embezzlement and sale thereof, are not an injury to the plaintiffs. Certainly, it seems to me. that the unfaithful agent cannot be permitted to say, after he has realized the fruits of his delinquency—"It is true, I have taken and

disposed of the shares of stock of the plaintiffs, and have real-
ized the proceeds thereof, but I did it under such circumstances,
that no legal liability can be created or claim made against me
for the property thus taken." I cannot recognize such a position
as sound in morals, or as sustained by any principle of law.
The plaintiffs have been deprived, by the fraudulent act of the
defendants, of what they claim to be their property, and the de-
fendants cannot be excused, on the ground that their fraudulent
acts have conferred no title upon the present owners and hold-
ers of these shares, and that, therefore, the plaintiffs are not
damnified.

The plaintiffs further say, that these shares were owned by
them, or were deposited with them for safe keeping. Does it
follow, because thus deposited, that the plaintiffs have sustained
no injury by the abstraction and embezzlement of them by the
defendants? The plaintiffs allege that they have sustained such
injury, and no fact is shown by the defendants which contro-
verts this position. I am, therefore, justified in the conclusion
in reference to this branch of the subject, that, as to such shares
of stock as were deposited with the plaintiffs, and taken and dis-
posed of by the defendants, they were deposited with the plain-
tiffs on such terms and conditions as would make them responsi-
ble to the owners thereof for the value of the same, especially
when such loss had been occasioned by the acts of the employees
of the plaintiffs. It is sufficient, for the purpose of this motion,
to say that the plaintiffs have made all the shares and coupons
taken and converted, their property, and claim the same as
such; and it is not competent for the defendants, in my judg-
ment, as already intimated, to exculpate themselves, by assuming
the ground that their acts are of so grave a character that the
title to these shares has never been changed.

The second cause of action is that authorized by section 206
of the Code, being an action to recover the possession of personal
property. There is no doubt that this is a substitute for the re-
lief heretofore obtained in an action of replevin. (Roberts *v.*
Randal, 3 *Sandf.*, 707; Chappel *v.* Skinner, 6 *How. Pr. R.*,
339.) In such an action the defendant may be arrested when he
has been guilty of a fraud in concealing or disposing of the
property, for the taking, detention, or conversion of which the
action is brought. (*Code*, § 179, *subd.* 4.) To maintain this ac-

tion, it is not essential that the plaintiffs should be the owners of the property taken, detained and converted. A bailee, trustee, or any other person who is responsible to his principal, may maintain the action, and the lawful possession of the goods is *prima facie* evidence of property. (*Edwards on Bailments*, 56; Fantherce *v.* Brown, 13 *Wend.*, 63; 2 *Burr. Pr.*, 2; 3 *Hill*, 348.) The plaintiffs, therefore, being in possession of these shares, whether as owners or as bailees, can maintain this action to recover the property taken, detained, and converted, and, so far as the defendants are concerned, are to be treated as owners thereof.

Are the facts, upon which the order of arrest was issued, sufficiently established to authorize its detention? In my judgment they are in reference to all of the defendants but Eugene Grelet and Felicité Dubud.

[The Court here proceeded to discuss, at length, the evidence adduced in the case against the several defendants, and to show that there was not sufficient against Eugene Grelet and Dubud, while there was against the others. We omit this portion of the opinion.]

The motion, therefore, to discharge the defendants Eugene Grelet and Felicité Dubud from arrest in this cause is granted, on their stipulating not to commence any action for unlawful imprisonment; and the motion as to the other defendants is denied.

Upon the settlement of the order, a further question was raised as to the propriety of the condition imposed upon the discharge granted; upon which question a further argument was heard.

*John Townshend*, for the defendants discharged, contended that the application to vacate the order, was *ex debito justitiæ*, and the condition suggested could not, therefore, be imposed. He cited Cash *a.* Walls, 1 *Barnw. & Ad.*, 375; Abbott *v.* Greenwood, 7 *Dowl. Pr. C.*, 534; Adlam *v.* Noble, 9 *Ib.*, 322; Pearce *v.* Chaflin, 9 *Q. B. R.*, 802; Giraud *v.* Austin, 1 *Dowl., N. S.*, 703; Bank of U. S. *v.* Jenkins, 18 *Johns.*, 309.

DAVIES, J.—The attention of the Court having been called to the condition upon which the order to discharge the defendants

Eugene Grelet and Felicité Dubud was granted, I have looked again into the practice in similar cases.

The rule, governing the courts in England, is thus laid down. (1 *Arch. Pr.*, *by Chitty*, 703.) "Generally speaking, if the application (to discharge from arrest) is successful, the judge either orders the payment of the costs by the plaintiff, and restrains the defendant from bringing any action on account of the arrest upon an improper affidavit, or else leaves the defendant to bring such action without making any order as to costs." The practice in the courts of this State is quite universal, to impose such a stipulation when it appears that the arrest was without malice and upon probable cause. No malice is alleged in this case; and that it was on probable cause, is manifest from the fact that it was made by the order of a judge of this court, upon being satisfied that sufficient grounds existed to authorize it.

The case of the Bank of United States *v.* Jenkins (18 *Johns.*, 305), cited by defendant's counsel, sustains this practice.

In that case, the attorney for the plaintiffs issued a *ca. sa.* against the defendant, and caused him to be arrested and imprisoned, when absent from home, in a distant county of the State, without having previously issued a *fi. fa.* against his property, as required by statute.

The court, in setting aside the *ca. sa.* and directing the defendant to be discharged from imprisonment, say :—" As the attorney of the plaintiffs would be liable to an action for false imprisonment, and as there might be some doubt as to the meaning of the act, and he may have acted in good faith, we think we have a right to impose terms on the defendant. We therefore grant the motion on condition that he stipulates not to bring an action for false imprisonment." The attention of the court was in that case again called to this condition, when Spencer, chief justice, says :—" We have again looked into the affidavits on which the motion was made, on the first day of the term, and on reconsidering the law, we are satisfied that there was nothing to warrant the practice pursued by the attorney for the plaintiffs ; and that it was merely an experiment, on their part, to get their money, supposing, probably, that if the defendant was taken in execution, at so great a distance from home, he would find some means to satisfy the debt." The court there-

fore directed the original rule to be amended by striking out the condition.

In this case, therefore, there was no intimation of any want of power in the court to impose such a condition, but on the contrary, an express affirmation and exercise of it, and which was only waived because the court was satisfied that the arrest of the defendant was procured by malicious motives and for unjustifiable purposes.

In the other case referred to, The Merchants' Bank of New-Haven *a*. Henry Dwight, Jun., in the Superior Court, the defendant was arrested on August 9, 1856, by virtue of an order made by one of the judges of that court, and imprisoned thereon.

On an appeal from said order, the case was heard before all the six judges of the Superior Court, who, on December 11, 1856, decided that the said order of arrest should be " vacated, and the defendant discharged from arrest thereunder. This order is made upon the condition that the said defendant shall within ten days from the date thereof stipulate not to bring any action for false imprisonment, or for damages, by reason of his said arrest, and deliver such stipulation to the plaintiffs' attorney in this action."

It was upon the authority of this and other cases, and the uniform practice of the courts in this State and in England, that I made the order I did, in vacating the order of arrest in this case as to the defendants Eugene Grelet and Felicité Dubud. I do not think I can greatly err in following such precedents. Being satisfied that there was no malice in causing the arrest of the defendants whose discharge I have directed, and that there was probable cause for the same, the proper form of the order to be entered, is like, in all respects, to the order of the Superior Court in the case of The Merchants' Bank of New-Haven *a*. Henry Dwight, Jun.