James, J.
Whenever property is obtained from another upon credit, with the preconceived design on the part of the purchaser to cheat and defraud the vendor out of the same, the vendor, upon the discovery of the fraud, may avoid the contract and retake the property, unless it has passed to the possession of a bona fide holder for value. Such, I -understand, was the conclusion of the court when this case was formerly before it. (18 N. Y., 295; Hall v. Naylor, 18 N. Y., 588.)
When the plaintiffs rested their case, they had given evidence showing that Pinner was insolvent when he purchased the goods in question; that before and at the time of his purchases, he represented that his business had been successful, that he intended to enlarge it and carry it more into wholesale, and keep it in such a position that he could come to New York in the fall to do business there; that he had an actual cash capital of over $80,000; that his purchases at the time in the city of New York were over • $40¡000; and having failed within four months thereafter, his assets were only $29,000, and he owed, exclusive of what was due his New York creditors, about $24,000. The evidence on this trial was the same as on the former trial, with the addition of that of Townsend, which proved the representations of Pinner at the time of the purchase. This was very material, and made a case proper for the jury.
*267 It is true, as a general rule, that a party who would disaffirm a contract must return, or offer to return, whatever he has received upon it. But in cases of fraud, when nothing is parted with by the fraudulent vendor but his own promissory notes, such a return or offer to return is not necessary before action brought; it is enough, if the notes are produced on the trial ready to be canceled. In a sale procured by fraud, no title passes; the vendor still retains his legal right to the goods, and rescinding the contract of sale, rescinds the contract of payment, and hence 'the notes fall with the contract. A note negotiable, whilst it remains in the hand of the vendor of the goods, stands upon the same footing in respect to a tender .prior to the commencement of an action, as one not negotiable. (Thurston v. Blanchard, 22 Pick., 18; Nellis v. Bradley, 1 Sandf., 560; Ladd v. Moore, 3 id., 589.) Most of the cases, where a return has been held necessary before action, related to executory sales, and where the party sought to rescind because of the other party’s failure to fulfill. In such cases, a tender is, no doubt, a condition precedent to a right of action. In this case, the note remained unnegotiated in the hands of the vendor, and therefore his right of action against Pinner was perfect without a tender.
As to Michael, a tender of the note and demand of the goods were made before action brought. As he was the general assignee of Pinner, to collect and receive all his dues and manage his assets, no good reason can be assigned why, if a tender to him were necessary, this was not sufficient for both. A surrender to Michael in that character would as effectually extinguish the notes as a delivery to Pinner.
Michael having the goods in possession was not only a proper but a necessary party defendant. But it was insisted that Pinner was improperly made a party, and that under the Code the action for the recovery of the possession of personal property can only be maintained against one who had in fact or in law the possession, control or title at the time of its commencement
*268 Formerly, the action of detinue was the proper action where there was a wrongful detainer (2 Saund., 84). There are some dicta in the books, that this action would not lie unless the defendant was in possession (Bul. N. P., 51; 1 Selw. N. P., 546): but that was not so. The defendant was liable in the action, though he had delivered possession to another before action brought: (Comyn’s Dig., A.; Jones v. Dowle, 9 M. & W., 19 ; Garth v. Howard, 5 C. & P., 846.) In Jones v. Dowle, Parke, B., stated the rule to be “that detinue does not lie” against one who never had possession of the chattel, but does against him who once had, but has improperly parted with it. And Chitty says, “ if he wrongfully delivered the goods to another he is liable; and I think the true rule was, that detinue would lie wherever the defendant had been in possession, whether he retained it or had wrongfully parted with it.” In this State the action of detinue was abolished by the Revised Statutes, and that of replevin extended so as to serve all the purposes of both actions, and under that statute the action of replevin would lie, although the defendant had parted with the property. (2 R. S., 522, §§ 11, 19; 22 Wend., 602.)
The 2d chapter of title 7, part 2 of the Code, sections 206, 207, &c., entitled “ claim and delivery of personal property,” is a substitute for the action of replevin as given by the Revised Statutes, and such an action may now be brought in all the cases where replevin would formerly lie. Some conflict has existed in the courts on the question, whether an action under the Code could be maintained, to recover the possession of personal property when the defendant had not the possession either in law or fact at its commencement. It was held in Roberts v. Randal (3 Sandf., 707), by the Superior Court at general term that it could not. That was an action to recover a Texas bond; the question arose on -an appeal from an order at chambers, discharging the defendant from arrest. The affidavits showed that the bond was delivered to the defendant to sell for not less than 40 per cent on the principal and interest, which the defendant some months prior to the suit had sold for 40 per cent on the principal only. The plaintiff had demanded *269 the bond, or the amount of it at the price limited, which was refused. The court say, “by the plaintiff’s own showing, the defendant had parted with the property long before the suit was commenced; and whatever it may be called, the suit is really one to recover damages for the conversion of the property.” The order was affirmed. That case was followed at special term in Brockway v. Burnap (8 How., 188; 12 Barb., 347), and in Elwood v. Smith (9 How., 528); but the case of Brockway v. Burnap was reversed at general term (16 Barb.,309), and the court then held, that an action to recover personal property could be maintained, notwithstanding the defendant had wrongfully parted with its possession before the suit was commenced. This we think the better rule, and we concur in the view therein expressed, that' “the legislature did not intend by the-Code tó abridge the former action of replevin as they found it; and that nothing therein prevents the present remedy, by an action to recover personal property, being as full, general and complete as that action was under the Revised Statutes.” In this view of the case, an action properly lajd against Pinner, notwithstanding he had assigned and delivered the property to Michael. He had fraudulently obtained the property and had it in his possession, and wrongfully parted with it. Michael was not a bona fide purchaser; the property was in his custody as trustee, for the benefit of Pinner’s creditors, Pinner having an interest in the residuum after paying his debts. Here was such a connection as would sustain a joint action against the defendants. Pinner had fraudulently obtained the goods and wrongfully transferred them to Michael to dispose of them, as his trustee; Michael had the possession and refused to surrender it on demand. The Code provides that any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. (§118.) Both these defendants claim an interest in the goods adverse to the plaintiffs; Pinner claiming that the purchase of the goods was free from fraud, and that they should be retained by his assignee, and *270 disposed of for the benefit of creditors—Michael claiming the possession for the same purpose, and refusing to surrender on demand. They were properly joined as defendants.
The charge of the judge as to the degree of false representa- • tions was in accordance with the rule announced by this court in its former disposition of the case. The judge was also right in his refusal to charge as requested. That rule has no application where (as in this case) there was evidence of false representations at the time of making the purchases. It has application only when there is no proof of aflirmative acts or representations, but rests wholly on the non-disclosure of insolvency.
That part of the charge which stated “that sufficient false representations in this case to avoid the sale, need not be such a false representation as would be indictable under the statute against false pretenses, ” was also correct. If goods are obtained by fraud, the vendor may rescind the sale and follow his.goods, whether such fraud be indictable or not. The right to rescind does not depend upon the provisions of the law for punishing the offender criminally. If there be fraud in the purchase, the ■ sale is voidable at the option of the vendee. (Cary v. Hotailing, 1 Hill, 311, 317.)
I have been unable to discover any error which calls for a reversal of this case, and the judgment should therefore be affirmed, with costs.
Selden, J.
There was no doubt sufficient evidence to justify the submission of this cause to the jury, upon the question of fraudulent misrepresentation and concealment on the part of Pinner, when he purchased the goods: and as the defendant Michael advanced nothing upon the faith of Pinner’s title, he is in no better situation than Pinner himself. If the case was made out as to Pinner, -the title of Michael under the assignment must of course fail, and he had no right to refuse .to deliver the goods upon demand.
It is insisted that an action to recover possession will not lie against Pinner, because he was not in possession at the time. *271 of the commencement of the suit; and because his previous possession was rightful, no attempt having been made by the plaintiffs to rescind until after the assignment and delivery to Michael; and that at all events there can be no recovery against Pinner and Michael, jointly. These objections are, I think, sufficiently answered by the cases of Garth v. Howard et al. (5 Car. & Pa., 346), and Jones v. Dowle (9 Mees. & Weis., 19). In the first of these cases, the defendant Howard, being lawfully in possession of certain plate belonging to the plaintiff, had, without authority from the plaintiff, pledged it, with the other defendant Fletcher for £200. The plaintiff demanded the plate of the latter, and then brought detinue against both. It was objected there, as it is here, that Howard had no possession at the time of the commencement of the suit, and hence the action would not lie against him. The court held, that the action would lie against both. • Tindal, Ch. J., said: “ The verdict must pass against both defendants, as one could not stand in a better situation than the other.” The decision in this case was put partly upon the ground that the defendant Howard had not assumed to part with the whole interest in the property, but retained some control over it by virtue of the right of redemption. But the Chief Justice also says: “ The question is, whether Howard has wrongfully pledged. If he has done so, he is answerable.” The other case, viz.: Jones v. Dowle, fully sustains the latter ground. There the plaintiff had bought a picture at an auction, at which the defendant acted as auctioneer. The latter, by mistake, entered the name of one Clift as the purchaser, and delivered the picture to him. The plaintiff demanded the picture of Clift, who refused to deliver it, and then brought detinue against the auctioneer. The counsel for the defendant insisted that the plaintiff was bound to show that the picture was in the possession or custody of the defendant, or of an agent over whom he could exercise control, at the time of bringing the action. But the court overruled the objection. Parke, B., said: “ Detinue does not lie against him who never-had possession of the chattel; but it does against him who once had, but has improperly parted with the possession of it.’
*272 The .theory upon which these cases proceed is perfectly sound, and applies directly to the present case. It is, that where a person is in possession of goods belonging to another, which he is bound to deliver upon demand, if. he, without authority from the owner, parts with that possession to one who refuses to deliver them, he is responsible in detinue equally with the party refusing. He contributes to the detention. It is the consequence of his own wrongful delivery. The action in such cases may properly be brought against both; because the acts of both unite in producing the detention.
It does not affect the principle, that Pinner in this case came to the possession of the goods by delivery, and under the former purchase, and not as a trespasser. If they were fraudulently obtained, he had no right to retain possession for one moment as against the plaintiffs, and could transfer no such right to his assignee. The action proceeds, not upon the ground of a tortious taking, but of a wrongful detention; and to this, Pinner has contributed by placing the goods in the possession of the defendant Michael, who refused to deliver them. The case cannot be distinguished in principle from the two English cases, to which I have referred.
But it is further insisted, that the plaintiffs should have been nonsuited; because they did not restore or offer to restore the notes of Pinner before commencing the suit. There is no doubt of the general rule, that where one party to a contract elects to rescind it for fraud, it is an indispensable preliminary that he surrender all that he has received from the other party upon the contract; and, if he has disabled himself'from doing this, it is too late to rescind. It has been held in several cases, that this principle applies when the party seeking to rescind has received the promissory note of a third person, as the consideration of the contract on -his part. He must, in» such cases, restore or offer to restore the note before bringing the suit. (Masson v. Bovet, 1 Denio, 69; Baker v. Rollins, 2 Denio, 137.) In the present case, the notes received by the plaintiffs were the notes, not of third persons, but of Pinner himself; and there is this important distinction to be observed, viz.: that in the *273 cases Cited, the ndtes Were not affected by the election of the party to rescind the contract, but might still be enforced notwithstanding the rescission, While, in this case; the moment the contract was rescinded, the notes; if in the hands of the plaintiffs, became entirely invalid and worthless. I aba not aware that it has been held, that in subh a case the restoration of the note is a condition precedent to the right of the party tti rescind. It is intimated by Beardsley,' J:, in the case of Baker v. Robbins (supra), that if the notes ih that ease had been shown to be of no value, it might not have been necessary to return them. ' The notes Of Pinner in this case, were of course rendered utterly valueless by the rescission of the contract.' The rule has not, I think, been carried to the extent of holding that in such a case, the notes must be returned before a Suit is brought. It would certainly be more in consonance with equity, to hold it sufficient to produce the notes upon the trial, and surrender them to the custody of the court, as in that Case the rights of both parties are protected. If the fraud is made out and the contract Subverted, the notes are void and will be canceled by the court. On the other hand, if the plaintiff fail to establish the fraud, the notes can be restored to him if the nature of the contract is such that justice requires it. Such a rule is not; I think, in conflict either with authority or principle, and may, therefore, be safely adopted. The negotiability of the notes in this case is of hó importance, so long as they have not been negotiated: nor do I think it would affect the rule if they had been at some period out of the hands of the plaintiffs, provided the possession and exclusive interest was in them at the time of the trial: The motion for a nonsuit,' therefore, was properly denied.
The remaining questions arise upon the charge of the judge. He instructed the jury, that if the defendant Pinner was insolvent and concealed the fact of his insolvency, with the design of procuring the goods and not paying fof them', it Was a fraud, which would avoid the sale at the option of the plaintiffs. It seems to have been supposed by the'counsel in this case, if not by the court below, that this instruction is in conflict with *274 something said by myself, when this cause was here upon a former occasion. (18 N. Y., 295.) ' My language must have been very inexplicit, if what I then said will bear the interpretation which appears to have been given to it; as I am not conscious of having ever held an opinion on this subject differing in the slightest degree from that expressed by the judge before whom this cause was tried.
The principles I intended to assert were: 1. That a mere intention of a vendee not to pay for the goods he purchases, unaccompanied by any misrepresentation or concealment, is not such a fraud as will vitiate the sale; and 2. That the bare omission of a purchaser to disclose his insolvency at the time of the purchase, not accompanied by any intent to defraud, is in like manner insufficient to destroy the contract. But I did not say that when the two are combined, that is, when the concealment of the fact of insolvency is accompanied by an actual intent to cheat, there is no fraud. That question was not presented by the case. The difficulty with the case at that time was, that the judge had not in his charge connected the two circumstances together, viz., the intent and the insolvency, but, on the contrary, by his refusal to charge as requested, authorized the jury to infer, that if they should find that Pinner was insolvent and omitted to disclose the fact, although without any fraudulent intent, their verdict should be for the plaintiff. This was a manifest error, and for that the judgment was reversed.
The judge, upon one construction of a portion of his charge, appeared to have instructed the jury, that although Pinner was not insolvent, and was guilty of no misrepresentation or concealment of any preexisting fact, yet if, when he made the purchase he intended to avoid paying for the goods, this would be such a fraud as would vitiate the sale. 'What was said in regard to'the effect of a naked intent not to pay for goods purchased was designed to meet this view of the charge. There can, I apprehend, be no doubt of the correctness of the doctrine then advanced upoa this subject.
*275 The jury were further instructed, that, in order to avoid a sale for fraud, the false representation need not he such as would be indictable under the statute, against false pretenses; and to this the counsel excepted. This exception is clearly untenable. The only case which appears to afford any countenance to the doctrine contended for, is that of Cross v. Peters. (1 Grreenl., 378.) Such a position was not necessary to the decision of that case, and the reasoning in its support is, I think, unsatisfactory. The judgment should be affirmed.
All the judges concurring,
Judgment affirmed.