THE CITY OF ROCHESTER, Appellant, *v.* ROCHESTER RAILWAY COMPANY, Respondent.

1. STREET SURFACE RAILROADS — LEGISLATIVE DIRECTION AS TO PAVEMENT OF STREETS AN EXERCISE OF TAXING POWER. That provision of the General Railroad Law (L. 1890, ch. 565, § 98) requiring street surface railroad companies to pay the cost of paving between their tracks is an exercise of the taxing power of the legislature.

2. CONSTRUCTION OF STATUTES EXEMPTING FROM TAXATION. Exemptions from taxation will not be sustained unless the intent of the legislature is clearly apparent; and in cases of doubt the rule "that courts are astute to seize upon evidence tending to show that either such exemptions were not originally intended or that they have become inoperative," is applicable.

3. MUNICIPALITY, IN CONSENTING TO CONSTRUCTION OF ROAD, CANNOT GRANT AWAY OR LIMIT THE TAXING OR POLICE POWERS OF THE LEGISLATURE. The Railroad Law of 1850 (Ch. 140) required the consent of a municipality to the construction of a surface railroad through its streets. Whatever may have been the effect of conditions attached to

such consent by the municipality, it had no power to contract away or limit the taxing or police powers of the legislature. A consent, however, notwithstanding unauthorized conditions, became effective and conferred a valid franchise.

4. Construction of Chapter 34, Laws of 1869, Exempting a Railroad Company from the Expense of New Pavements in the City of Rochester. The immunity from contribution to the expense of new pavements in the city of Rochester, conferred by chapter 34 of the Laws of 1869 upon the Rochester City and Brighton Railroad Company, a street surface railroad incorporated in 1868 under the Railroad Law of 1850, which, by purchase at foreclosure sale, had acquired the franchises of a prior company organized under the same act, and which had constructed the road, was not a contract right of which the company could not be deprived by subsequent legislation. The fact that the conditions attached to the original consent were modified by the city, they being deemed too onerous for the company, by an ordinance passed prior to the act, which exempted it from the expense of new pavements for five years, and also provided that the fare for children between twelve and five years should be reduced, and that both parties united in submitting it to the legislature which enacted the law in question, except as to the five-year limitation, and that after its passage the company extended its lines into other streets, as permitted by the statute, does not render it an irrevocable agreement by the state to exempt the company from such expense as to those streets. The statute did not recite that application was made to the legislature by either party for the adoption of any contract between the city and the company. It did not ratify or assume to ratify any contract. It did not grant a franchise, since that had already been acquired. It did not amend or assume to amend the charter of the company, and if it had, the charter would have been subject to repeal. No acceptance by the railroad company was requisite, and, therefore, the fact that it continued to operate its road and to construct lines in other streets, in alleged reliance upon perpetual exemption as to such streets, cannot be regarded as furnishing a consideration therefor. The statute did give an exemption, but being without a consideration, a mere gratuity or privilege was conferred which was revocable at the pleasure of the legislature. When, therefore, by section 9 of chapter 252 of the Laws of 1884, the provisions of which were re-enacted in the General Railroad Law (L. 1890, ch. 565, § 98), the cost of repavement as specified was imposed upon all street surface railroads operating in cities, a contention by the lessee of such railroad company that it did not apply to streets in which the lessor had constructed and operated its lines before its enactment, and that as to these a contract of exemption existed, the obligation of which could not be impaired by subsequent legislation, is untenable.

5. The Right to Exemption from Taxation Is Personal Unless the Contrary Clearly Appears and Does Not Pass to the Lessee. Assuming, however, that the statute constituted a contract, exemptions

from taxation or from the exercise of the police power are to be construed *strictissimi juris ;* they are against common right and must be held to be personal and limited to the grantee unless a contrary intention clearly appears. The right to exemption, therefore, did not pass to the lessee, the language being personal and not attached to the property, the statute enacting that "said company," not " said company, its successors and assigns," shall not be required to bear any part of the expense of repaving the streets.

*City of Rochester* v. *Rochester Ry. Co.,* 98 App. Div. 521, reversed.

(Argued April 18, 1905; decided June 6, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 6, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

This action is brought to recover of the defendant the expense of paving between the tracks, the rails of the tracks and two feet outside of the tracks of the defendant's railway, on North St. Paul street and Park avenue in the city of Rochester.

The findings of fact were stipulated by the parties. On or about May 31st, 1862, the Rochester City & Brighton Railroad Company was incorporated under the provisions of the General Railroad Act of 1850 (L. 1850, chap. 140). The route described in its articles of association is identical with certain of the routes described in the articles of association of the defendant. In June, 1862, the common council of the city of Rochester, by resolution, consented to the construction of a street surface railroad upon the routes designated and one of the conditions of the grant, (section 2), was that the grantee should improve with suitable materials as required by the common council of the city, and in a proper manner, between its tracks, the rails of its tracks and for two feet four inches outside thereof, and should keep the surface of the street inside the rails and for two feet four inches outside thereof in good repair. The railroad company was authorized in the resolution to collect from every person for riding any distance

upon said road a sum not exceeding five cents, except children under five years of age, who were to ride free.

In October, 1862, the railroad company mortgaged its rights, privileges, property and franchises. This mortgage was duly foreclosed and at the foreclosure sale the rights, privileges, property and franchises were purchased by Chauncey B. Woodworth; who, on or about March 5th, 1868, associated with himself as such purchaser certain persons and duly incorporated a company by the name of the Rochester City & Brighton Railroad Company to continue ninety-nine years, for the purpose of operating the railroad theretofore operated by its predecessor corporation, the Rochester City & Brighton Railroad Company. Immediately after the incorporation, the company petitioned the common council, protesting against the onerous conditions of the resolution of 1862, and setting forth the inability of the new corporation to proceed with the operation of the railroad subject to such conditions and the fact that the road had never paid, owing to the existence of such conditions. Thereafter the common council in January, 1869, duly amended section two of the ordinance of 1862, so as to read as follows: "The track of said railroad shall be laid so as to permit the free passage of vehicles and carriages over the same, and the rails shall be laid even with the surface of the streets and shall conform to the grades thereof as now established, or as they shall from time to time be established, or altered. Said company shall, as soon after the adoption of this ordinance as the condition of the streets through which their track is laid will permit, put the surface of said streets inside the rails and for one foot outside thereof, in good and thorough repair, under the direction of the committee on streets and bridges of the common council, and shall thereafter keep said streets in good repair inside its tracks or between the rails of their tracks, only during the term of five years, and whenever it becomes necessary to improve, by ordinance or otherwise, any of the streets through which their track is laid, with a new or permanent improvement, said company shall not be required to make any part

or portion thereof, nor bear any part or portion of the expense of making the same, during the term of five years from the adoption of this ordinance."

Shortly after the adoption of this resolution the Rochester City & Brighton Railroad Company submitted to the city authorities a proposed act of the legislature; whereupon the common council adopted the following resolution : " *Resolved,* That the clerk of this board be authorized to transmit a copy of the bill relating to street railroads presented by the mayor to this board, to the legislature, requesting said body to legalize the action of the common council by the passage of said bill." On or about the 12th day of February, 1869, the act was passed by the legislature and is entitled, " An Act for the relief of ' The Rochester City & Brighton Railroad Comany,' " and is known and designated as chapter 34 of the Laws of 1869. Its provisions, so far as material, are these : " Section 1. The Rochester City & Brighton Railroad Company is hereby authorized and empowered to maintain and operate a railroad in all of the streets of the city of Rochester in which it has a track now laid, and with the permission of the common council of said city, in such other streets in said city as it shall elect to use for that purpose ;   *   *   *

" Section 2. Said company, by and with the consent of the common council of said city, may at any time hereafter, abandon the use of any street now used, or which may hereafter be used by it for the operation of its road,   *   *   *

" Section 4. Said company may, and is hereby authorized to charge, collect and receive from each and every passenger for riding any distance upon its said road, towards or from the intersection of Buffalo street with State and Exchange streets, in said city, the sum of five cents, except that children under twelve years of age shall only be required to pay three cents fare, and children under five years of age, accompanied by parents or other persons having them in charge, shall ride free.

" Section 5. Said company shall put, keep and maintain the surface of the streets inside the rails of its track, in good and

thorough repair, under the direction of the committee on streets and bridges of the common council of said city of Rochester; but whenever any of said streets are by ordinance or othewise permanently improved, said company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof, but it shall make its rails in such street or streets conform to the grade thereof."

Thereafter, the Rochester City & Brighton Railroad Company continued to maintain and operate its street surface railroad and, with the consent of the common council, extended its railroad into many other streets and parts of streets in the city of Rochester, incurring thereby large expense and expending large sums of money therefor, the exact amount of which does not appear. The company kept in repair the pavement as required; but whenever a street was improved by a new pavement it was not called upon by the authorities of the city of Rochester to make, or to pay for, any part of such improvement. On the 18th of May, 1880, the common council of the city of Rochester re-enacted the ordinance of 1862, as amended in 1869.

On the 21st of January, 1890, the Rochester City & Brighton Railroad Company petitioned the common council for permission to change its motive power from horses to the overhead system of electricity, commonly known as the "trolley system." The prayer of the petition was duly granted by resolution of the common council. The material to be used and the manner of construction and maintenance were particularly set forth in the resolutions, and it was further provided that, before the grant and consent should become operative, the said company should deliver a written agreement with the city to comply with each and all of the provisions contained in the resolutions and to well and truly, at all times, comply with all ordinances and resolutions of the common council of said city not in conflict therewith, which had been at any time before, or which might at any time thereafter be, passed, relating to the rate of speed, etc., and to the general repairs of the streets within and for two

feet outside of and adjoining said company's track or tracks. In accordance with and pursuant to said resolutions the Rochester City & Brighton Railroad Company, on the 25th of February, 1890, made and entered into the proposed contract in writing, by which the company accepted the conditions imposed.

On the 25th of February, 1890, the Rochester City & Brighton Railroad Company duly executed, and delivered to the defendant, a lease of all its property, franchises, rights and privileges of every kind and description, for the unexpired term of its charter. Thereafter, in the year 1890, the defendant applied to the board of railroad commissioners of the state of New York for permission to change the motive power of the railroad so acquired by it, and the board duly granted such permission. The defendant, at great expense, proceeded to, and did, reconstruct the entire railroad and equipped the same with electrical appliances. The defendant, in acquiring the capital stock of the Rochester City & Brighton Railroad Company, in the conversion of said railroad from a horse railroad to an electrical railroad and in the reconstruction and re-equipment thereof, had, prior to the commencement of this action, expended upwards of four millions of dollars and such expenditure was made by the defendant in reliance upon the provisions of said act of 1869, and in reliance upon said contract of February 25th, 1890.

The Rochester City & Brighton Railroad Company duly complied with and performed all the conditions of the said contracts by it agreed to be performed, and, since the making of said lease, the defendant has duly complied with and performed all the conditions and obligations of said contracts on its part to be performed. Since the passage of the act of 1869 and up to March 16th, 1897, neither the Rochester City & Brighton Railroad Company, nor the defendant, has ever been assessed for, or required to pay, any portion of the expense of a new or permanent improvement of any portion of any street, avenue or highway in which the Rochester City & Brighton Railroad Company obtained its franchise and con-

structed its road prior to the 6th day of May, 1884. After the passage of chapter 252 of the Laws of 1884, the Rochester City & Brighton Railroad Company obtained from the municipal authorities of the city of Rochester various consents to extend its tracks and railroads into various streets of the city upon the condition provided for in chapter 252 of the Laws of 1884, as follows: "Upon the express condition that the provisions of Chapter 252 of the Laws of 1884 *pertinent thereto* shall be complied with." Since the lease, the defendant has applied to the municipal authorities of the city for consents to extend its railroad into various streets of the city, named in its articles of association, or in certificates of extension filed by it, and the municipal authorities have granted such right or franchise to make such extension since the passage of the General Railroad Act, known as the Railroad Law, and such consents had annexed the condition required by the provisions of the General Railroad Act, as follows: "That the foregoing consent is given upon the following conditions expressly, to wit: that the provisions of Article IV of the Railroad Law *pertinent thereto* shall be complied with." Both the Rochester City & Brighton Railroad Company and the defendant acted upon such consents and built the extensions into such various streets under such consents.

In December, 1894, the defendant presented to the common council a petition, stating that the location of the tracks of the Rochester City & Brighton Railroad Company and other railroad companies, to the rights of which the defendant had succeeded, and the tracks of the railroad of the defendant as laid had not been fixed with due and proper formality, although resolutions from time to time granting the right had been passed by the common council and the consents of property owners had been obtained, and that, as the defendant had substantially completed its system of operating its cars with electric motive power, it seemed right and proper that a formal resolution of the common council should be passed, ratifying and approving of the location of its tracks, poles, wires and appurtenances, as then at present

located and constructed. Thereupon, the common council passed an ordinance, containing the conditions upon which the city would grant the prayer of the petition and directing the city attorney to prepare a contract in accordance therewith. The contract was so made and executed by and on behalf of the city and the defendant on the 31st of December, 1894. The conditions imposed, including the consideration moving to the city, so far as material, were as follows:

"*Resolved*, That the location of the railroad and tracks of the said Rochester Railway Company, as now operated and used by the said company in the streets, avenues and highways hereinafter specifically described, is hereby ratified and approved, . . . upon the following conditions:

"First—That the provisions of Article Four of the Railway Law of the State of New York, being an act in relation to railroads constituting Chapter 39 of the General Laws of the State of New York, be complied with.

"Second—In order to increase the efficiency of the police system of said city, . . . that the said company, its successors and assigns, furnish transportation . . . to not more than two policemen at a time upon each of the cars of said company, . . . and . . . shall issue to the active detectives of the police force, to the number of not more than nine, tickets . . . on the cars of the company . . .

"Third— . . . that said company shall furnish like transportation for the same consideration hereinbefore expressed to not more than two firemen at a time upon each of the cars of said company, . . .

"Fourth—That all the provisions of any agreement between the City of Rochester and any street railroad company, and all ordinances, resolutions, grants and consents heretofore passed by said city, with reference to the construction, maintenance or operation of street railroads within said city shall remain in full and binding force; and these resolutions shall not be construed as extending or affecting the franchise of any such company, or the time of the expiration of any such franchise, or the moneys required to be paid to

said city by such company, or as repealing, modifying or changing in any respect the terms or provisions of any agreement previously entered into between said city and any street railroad company."

Thereafter, and from March 16th, 1897, the plaintiff claimed that the defendant was liable to pay for all paving, when a street was improved with a new pavement between its tracks, the rails of its tracks and two feet outside. The legislature, on the 26th of April, 1901, passed chapter 562 of the laws of that year; entitled "An Act to authorize and empower the City of Rochester to enter into a contract with the Rochester Railway Company, adjusting and settling all differences between the city and said railway company as to the amount due and owing from the company to the city for certain pavements heretofore made by the city, pursuant to section 98 of the Railroad Law, and providing for the payment of the same."

Thereafter and on the 27th day of April, 1901, plaintiff and the defendant entered into an agreement, which recited the matters in difference between the city and the defendant and, in settlement thereof, provided that the defendant should pay to the city, in full satisfaction and discharge of its claims for paving, the sum of three hundred eighty-six thousand six hundred thirty-two dollars and forty-six cents. The defendant agreed therein to waive any claim for exemption from paying for pavements thereafter laid in streets, in which it, or the Rochester City & Brighton Railroad Company, obtained a franchise and constructed tracks after May 7th, 1884; but, "as to all claims which may hereafter be made by the city against the railway company for all pavements hereafter made in streets or parts of streets in the said city, in which the Rochester City & Brighton Railroad Company obtained its franchise, or constructed a railroad, prior to the 7th day of May, 1884, the question of the liability of the railway company to pay for making pavements in such streets, or parts of streets, between its tracks, the rails of its tracks and two feet outside, or any part thereof, shall be litigated and determined

in a court having jurisdiction. . . . It being expressly agreed and understood between the parties that the question of the liability of the railway company to pay for paving hereafter made in any such streets or parts of streets in which the Rochester City & Brighton Railroad Company obtained its franchise or constructed a railroad prior to the 7th day of May, 1884, is not conceded by the railway company, or waived by the city, but shall be judicially determined finally as aforesaid."

At the Special Term the defendant recovered a judgment, which dismissed the complaint upon the merits, and that judgment has been affirmed by the Appellate Division in the fourth department.

*William W. Webb* (*Corporation Counsel*), for appellant. Every street surface railroad corporation is under the duty of complying with the provisions of section 98 of the Railroad Law, no matter what its franchise or contract obligations were previous thereto. (*Conway* v. *City of Rochester*, 157 N. Y. 33; *Binninger* v. *City of New York*, 177 N. Y. 199·; *Vil. of Mechanicville* v. *S. & M. S. Ry.*, 35 Misc. Rep. 513; 67 App. Div. 628; 174 N. Y. 507; *S. C. R. Co.* v. *Sioux City*, 138 U. S. 98.) The only exemption of the railway company from paying its share of paving streets through which the railway is operated, was granted by an ordinance of the common council adopted in 1869, and such exemption was expressly limited by the terms of said ordinance to a period of five years from the date of its adoption. (*S. C. S. Ry. Co.* v. *Sioux City*, 138 U. S. 98; *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Stanislaus Co.* v. *S. J. & K. R. C. & I. Co.*, 192 U. S. 201.) The defendant has contracted away any right or claim which it might have had to exemption from bearing its share of the expense of paving streets in which its tracks are laid. (*People ex rel. McLaughlin* v. *Police Comrs.*, 170 N. Y. 450; *Wormser* v. *Brown*, 149 N. Y. 163; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Spafford* v. *Pearsall*, 138 N. Y. 57; *City of*

*Rochester* v. *Coe,* 25 App. Div. 300 ; *Trustees of East Hampton* v. *Vail,* 151 N. Y. 463.) The act under which the defendant is incorporated provides that all corporations incorporated thereunder shall keep in permanent repair the space between the tracks, the rails of the tracks and two feet in width outside thereof, of the railways operated by such corporation and the defendant is bound thereby. (*Minor* v. *Erie R. R. Co.,* 171 N. Y. 566 ; *G. R. & I. R. R. Co.* v. *Osborn,* 193 U. S. 17.) The defendant has extended its railroad under the provisions of the Railroad Act, and, therefore, has become subject to the liabilities imposed by that act. (L. 1895, ch. 933 ; L. 1892, ch. 676.) The legislature had, by virtue of its reserved power, the right to repeal the law which it is claimed exempted the Rochester City and Brighton Railroad Company from liability to bear its share of constructing new pavements. (N. Y. Const. of 1846, art. 8, § 1 ; N. Y. Const. of 1894, art. 8, § 1 ; *People ex rel. Cayadutta Plank Road Co.* v. *Cummings,* 166 N. Y. 110 ; *S. C. S. R. Co.* v. *Sioux City,* 138 U. S. 98 ; *Stanislaus Co.* v. *S. J. & K. R. C. & I. Co.,* 192 U. S. 201.)

*Charles J. Bissell* and *William C. Trull* for respondent. The General Railroad Acts, in imposing liability upon the defendant and the railroad and property of the defendant for the permanent improvement of the streets mentioned in the complaint, impair the obligation of the contract existing between the defendant and the state of New York and the city of Rochester, relieving defendant from liability to pay or bear any portion of such expense. (*People* v. *B., F. & C. I. R. Co.,* 89 N. Y. 75 ; *People* v. *Sturtevant,* 9 N. Y. 273 ; *Milhau* v. *Sharp,* 27 N. Y. 611 ; *Potter* v. *Collis,* 156 N. Y. 16 ; *B. C. R. R. Co.* v. *B. C. R. R. Co.,* 32 Barb. 358 ; *People* v. *O'Brien,* 111 N. Y. 1 ; *State ex rel. Kansas* v. *C. C. St. R. Co.,* 85 Mo. 263 ; *Kansas* v. *Corrigan,* 86 Mo. 67.) Neither the reservation contained in the Constitution of the state, nor that contained in the Revised Statutes, nor that contained in the act of 1850 authorizes or justifies

the imposition by the Railroad Act of the liability in question upon the property of the defendant. (Const. of N. Y. art. 8, § 1; R. S. [7th ed.] ch. 18, tit. 3, § 8; L. 1850, ch. 140, § 48; *People* v. *O'Brien*, 111 N. Y. 1; *Comm.* v. *Essex Co.*, 13 Gray, 239; *A. R. R. Co.* v. *Brownell*, 24 N. Y. 345; *City of Detroit* v. *D. & F. P. Co.*, 43 Mich. 140; *Greenwood* v. *F. Co.*, 105 U. S. 13; *New Jersey* v. *Yard*, 95 U. S. 104; *Bank* v. *Knoop*, 16 Wall. 380; *Stearns* v. *Minnesota*, 179 U. S. 223; *D. & I. R. Ry. Co.* v. *County of St. Louis*, 179 U. S. 392; *Chicago* v. *Sheldon*, 9 Wall. 50; *People* v. *O'Brien*, 111 N. Y. 1.) The various extensions made by the Rochester City and Brighton Railroad Company of its railroad, under the General Railroad Act (L. 1884, ch. 252), and the changing of its motive power to electricity, under the provisions of that act, did not amount to a waiver of its rights under the ordinances and chapter 34 of the Laws of 1869. (*Minor* v. *E. R. Co.*, 171 N. Y. 566; *G. R. & I. R. R. Co.* v. *Osborn*, 193 U. S. 17; *Matter of T. A. R. R. Co.*, 121 N. Y. 536.) The act of the defendant in applying for and obtaining extensions of its railroad, and of that of the Rochester City and Brighton railroad, leased to and merged by it, under the provisions of the General Railroad Acts of 1890, 1892 and the several acts amendatory thereof, did not operate as a waiver of its rights in the railroad of the Rochester City and Brighton Railroad Company, given by chapter 34 of the Laws of 1869, nor make the whole of its railroad subject to the provisions of section 98 of the Railroad Law. (*Gilmore* v. *City of Utica*, 121 N. Y. 561; *Parker* v. *E., C. & N. R. R. Co.*, 165 N. Y. 274.) The petition by the defendant to the common council of the city of Rochester for confirmation of the location of its tracks and the execution by it of the agreement of the 31st of December, 1894, and the ordinance of that date, did not amount to an agreement by it to waive the constitutional protection of its rights under the act, chapter 34 of the Laws of 1869. (*B. C. R. R. Co.* v. *B. C. R. Co.*, 32 Barb. 358; *People* v. *Sturtevant*, 9 N. Y. 273; *Milhau* v. *Sharp*, 27

N. Y. 611; *People* v. *O'Brien,* 111 N. Y. 1.) The General Railroad Acts as construed, in connection with the city charter, violate the provisions of the Federal Constitution in that they deny to the defendant the equal protection of the laws. (*County of Santa Clara* v. *S. P. R. R. Co,* 118 U. S. 394; *Pembina Co.* v. *P. R. R. Co.,* 125 U. S. 181; *M. P. R. Co.* v. *Mackey,* 127 U. S. 205 ; *M. & St. L. Ry. Co.* v. *Henrick,* 127 U. S. 210; *M. & St. L. Ry. Co.* v. *Beckwith,* 129 U. S. 26; *H. Ins. Co.* v. *People,* 134 U. S. 594; *C. & C. R. Co.* v. *Gibbes,* 142 U. S. 386; *C. & L. T. Co.* v. *Sanford,* 164 U. S. 578; *Smith* v. *Ames,* 169 U. S. 522; *Fire Dept.* v. *Stanton,* 159 N. Y. 225.)

Cullen, Ch. J.  I concur in the view of Judge Gray that this defendant cannot in any way be foreclosed by our decision in the action of *Conway* v. *City of Rochester* (157 N. Y. 33) (an action to which it was not a party), from asserting that the immunity from contributions to the expense of new pavements in the city of Rochester, enacted by chapter 34 of the Laws of 1869, was a contract right of which it could not be deprived by subsequent legislation.  On the merits, however, I am of opinion, first, that the statute mentioned did not constitute a contract between the state and the railroad company; second, that if it did, the exemption granted by the statute was personal to the defendant's predecessor in title and has not passed to it.

I assume that the provision of the General Railroad Law (section 98) requiring street surface railroad companies to pay the cost of paving between their tracks and for two feet outside thereof is an exercise of the taxing power (*Sioux City St. Ry. Co.* v. *Sioux City,* 138 U. S. 98 ; *Worcester* v. *Worcester St. Ry. Co.,* 196 U. S. 539), though if an exercise of the police power the result would be the same.  The statute of 1869 (sec. 5) enacted that the defendant's predecessor should put, keep and maintain the surface of the street inside the rails of its tracks in thorough repair, but whenever any of said streets was by ordinance permanently improved said company should not be

required to bear any part or portion of such improvement or of the expense thereof, but should make its rails conform to the grade of the street.   This certainly did exempt the company from any expense of repavement so long as the statute remained in force, but the question is, did the statute confer upon the company any contract right immune from subsequent recall or was it the mere exercise by the legislature of the taxing power, which could at any time be changed, modified or repealed ?   To determine this question it is necessary to consider the condition of the parties when the statute was enacted and in that consideration to keep constantly in view the well-settled rule for the construction of statutory exemptions from taxation as declared by the Supreme Court of the United States in a long and unbroken line of decisions.   In *Yazoo, etc., Ry. Co.* v. *Adams* (180 U. S. 1) it is said : "Exemptions from taxation are not favored by law, and will not be sustained unless such clearly appears to have been the intent of the legislature.   Public policy in all the states has almost necessarily exempted from the scope of the taxing power large amounts of property used for religious, educational and municipal purposes ; but this list ought not to be extended except for very substantial reasons; and while, as we have held in many cases, legislatures may, in the interest of the public, contract for the exemption of other property, such contract should receive a strict interpretation and every reasonable doubt be resolved in favor of the taxing power.   Indeed, it is not too much to say that courts are astute to seize upon evidence tending to show either that such exemptions were not originally intended, or that they have become inoperative by changes in the original constitution of the companies." (See cases there cited, particularly *New Orleans City & L. R. R. Co.* v. *New Orleans,* 143 U. S. 192, and *Memphis Gas Light Co.* v. *Shelby Co.,* 109 U. S. 398.)

In 1862 the Rochester City & Brighton Railroad Company was incorporated under the General Railroad Act of 1850 (Ch. 140) for the purpose of operating a street railroad on certain streets in the city of Rochester extending into an

8

adjoining town. That statute authorized the incorporation under it of street surface railroad companies. (*Matter of. Washington St. A. & P. R. R. Co.*, 115 N. Y. 442.) This proposition was never questioned till the decision of this court in *Matter. of New York Cable Company v. Mayor*, *etc., of N. Y.* (104 N. Y. 1), and, in fact, most of such companies outside of the old city of New York were organized under that statute. Whatever doubts were cast on the application of the General Railroad Act to street railroads by the opinion in the *Cable Company* case were removed by the decision in the *Washington Street* case, where the remarks in the earlier case were expressly retracted. By the General Railroad Act plenary power was given to any railroad company incorporated under it to lay out and construct its road between the termini mentioned in the articles of association, except that subdivision 5 of section 28 provided that the statute should not be construed to authorize the construction of any railroad upon, along or across any streets in any city without the assent of the corporation of the city. It was, therefore, necessary for the construction of any street railroad within a city that the company should obtain the consent of the city to the use of the street. The city of Rochester by an ordinance consented to the construction of the proposed railroad. It exacted by that ordinance compliance with the terms and conditions which appear in Judge Gray's opinion. The road was built, the company failed and its road and franchise were sold in 1868 under a foreclosure, the purchaser at which conveyed to a new company, bearing the same name, also organized under the general statute of 1850. In 1869 the new company represented to the common council that the terms of the ordinance under which the road was built and being operated were too onerous and asked for relief. Thereupon the common council passed a new ordinance, the most material points of which were that the fare for children was fixed at three cents, and the company was relieved for the term of five years from its obligation to contribute to the expense of the repavement or

improvements of the streets, though it was required to keep the space between its tracks and one foot additional on each side in good repair. Both parties sought the action of the legislature and the statute of 1869 was passed. Now, let us see what were the rights of the parties at the time of the enactment of this statute. The company had, by the construction of the railroad by its predecessor, under the consent of the common council, and its own purchase on the foreclosure, acquired a valid franchise to operate its railroad. It is not necessary to determine what was the effect of the conditions attached by the city of Rochester to its consent. If there was no authority to impose those conditions, nevertheless the consent was effective and the franchise valid. (*Matter of Kings Co. El. R. R. Co.*, 105 N. Y. 97.) On the other hand, it is equally clear that under the power given by the General Railroad Act to the municipality to consent to the construction of such a road, the municipality could in no degree contract away or limit the taxing power or the police power possessed by the legislature. (*People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Sioux City St. Ry. Co.* v. *Sioux City, supra.* See, also, *Worcester* v. *Worcester St. Ry. Co., supra.*) The rights and immunities, therefore, of the company at that time must be determined by the provisions of the act of 1850, which gave no exemption from the future exercise by the legislature of either power. In the exercise of the police power the legislature could prescribe the maximum fares to be charged by the company (*Buffalo E. S. R. R. Co.* v. *B. S. R. R. Co.*, 111 N. Y. 132; *Railroad Commission Cases,* 116 U. S. 307; *Norfolk & Western R. R. Co.* v. *Pendleton,* 156 U. S. 667), and such right was reserved by section 23 of the statute subject to the qualification that the fare should not be reduced so that the net returns to the company should be less than ten per cent on the sum actually invested. So equally in the exercise of the taxing power it could relieve the company from the burden of any provisions imposed on it by the ordinance of the common council in 1862. (*Worcester* v. *Worcester St. Ry. Co., supra.*) Neither of these powers was

necessarily to be exercised once for all.  Unless contracted away the right to their exercise was continuous and statutes passed under them could be varied or altered from time to time.  The statute does not assume to ratify or authorize any contract between the railroad company and the common council of the city.  It does not recite that application has been made to the legislature by either party for its adoption.  It merely enacts what the legislature was empowered to enact, whether with or without the consent of either or of both parties.  Indeed, it would seem a conclusive objection to considering the statute as ratifying any contract of the common council that the ordinance of the common council gave the railroad company immunity from contribution to the expense of improvement of the street only for five years, a term long since expired, while that enacted in the statute is not limited in duration.  The statute *did not* grant the franchise; that had been already acquired.  Nor does the record disclose even a suggestion that there was entertained any question as to its validity.  It is settled by authority that an exemption from taxation or regulation of charges granted by statute to be irrevocable must be based on a consideration; when a mere gratuity or privilege it may be recalled at any time. (*Rector, etc., of Christ Church* v. *County of Philadelphia,* 24 How. [U. S.] 301; *Tucker* v. *Ferguson,* 22 Wall. 527.) When such exemptions are granted in the charter of a corporation then the acceptance of the charter is assumed to be the consideration for the grant of the exemption. (*Home of Friendless* v. *Rouse,* 8 Wall. 430.)  But the act of 1869 neither amends nor assumes to amend the charter of the company, and if it did it would be subject to the constitutional reservation of amendment or repeal.  The true test of whether there was any consideration for the exemption granted by the statute is whether any acceptance of its terms and provisions was necessary to make it effectual. If not, how can it be said that the exemption is other than a privilege?  Here lies the distinction between this case and that of *New Jersey* v. *Yard* (95 U. S. 104).  In the case cited the

statute of New Jersey required the written acceptance of its terms by the company or else it became wholly inoperative. It is to be further noticed that there was no provision in the New Jersey Constitution similar to that in ours, which reserved the unqualified right to alter or repeal charters, and the decision proceeded in part on this last ground. It is also settled that neither corporations nor individuals have a vested right that the law shall continue to be unchanged. Had, in 1869, instead of the special statute, a general law been passed exempting railroad companies from contribution towards the cost of repaving the streets, it is clear that such law might have been thereafter repealed, and there might be imposed on the company a reasonable and proper tax for the improvement. (*Pennsylvania R. R. Co.* v. *Miller*, 132 U. S. 75.) Now, how does it differ that instead of a general statute a special law was enacted? In my opinion it only goes to the intent of the legislature. If I am right in the position that the legislature could have enacted the statute of 1869, so far as its provisions are under examination here, without any assent from the railroad company, then had the act concluded, " this statute is passed in the exercise of the powers of taxation and police and not as a grant," it could not well be contended that the railroad company acquired thereby any contract or property right. I imagine that a continuous power vested in the legislature may be exercised and its exercise recalled or modified as well by special legislation as by general legislation if no provision of the State Constitution forbids, which was the case in 1869. If to-day a statute were passed repealing section 98 of the present General Railroad Law and enacting that street railroad companies shall not be compelled to pay any portion of the expense of paving the streets within their tracks, will it be denied that subsequently the legislature might change that policy and impose on the companies a burden of which it had previously relieved them? If this be so, why equally may not the legislature relieve to-day a particular railroad company from that burden and next year reimpose the burden upon it? The only difference that I

can see between the two cases is that in the case of a statute applicable to a particular corporation, when that statute gives the charter an intent to grant away, the right to tax may be implied, which would not be implied in the case of general legislation. But if the question comes to one merely of intent, then the rule already quoted, " that courts are astute to seize upon evidence tending to show that either such exemptions were not originally intended or that they have become inoperative," should be decisive of the question.

I am further of the opinion that any right to exemption from the cost of paving the streets, which may have been held by the Rochester City & Brighton Railroad Company, was personal and did not pass to this defendant. This has been so held in a number of decisions by the Supreme Court of the United States. (*Shields* v. *Ohio,* 95 U. S. 319; *Railroad Co.* v. *Maine,* 96 U. S. 499; *Railroad Company* v. *Georgia,* 98 U. S. 359; *Norfolk & Western R. R. Co.* v. *Pendleton,* 156 U. S. 667; *Yazoo & M. V. Ry. Co.* v. *Adams,* 180 U. S. 1; *Morgan* v. *Louisiana,* 93 U. S. 217; *Wilson* v. *Gaines,* 103 U. S. 417; *Chesapeake & Ohio Ry. Co.* v. *Miller,* 114 U. S. 176; *Tucker* v. *Ferguson,* 22 Wall. 527.) In the *Norfolk & Western Railroad* case it was said : " We have frequently held that, in the absence of express statutory direction, or of an equivalent implication by necessary construction, provisions, in restriction of the right of the state to tax the property or to regulate the affairs of its corporations, do not pass to new corporations succeeding, by consolidation or by purchase under foreclosure, to the property and ordinary franchise of the first grantee ; * * * this we have stated to be a salutary rule of interpretation, founded upon an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and, therefore, not to be extended beyond the exact and express requirements of the grant construed *strictissimi juris.*" That privilege is not at all similar to such franchises as the right to construct and operate a railroad, to lay gas mains and supply gas, and to maintain a ferry. Those franchises when granted become prop-

erty similar in their general attributes to other property.  The grant of such a franchise, even without consideration, is, unless a right to revoke is reserved, as effectual to vest an indefeasible title in the grantee as a voluntary conveyance of a piece of land.  Not so, however, as to an exemption from taxation or from the exercise of the police power.  It is property only when granted on a consideration and if granted without consideration may be recalled.  (See cases cited *supra.*)  Doubtless such exemptions if attached to property itself would increase its value, but because they are against common right they will be construed to be personal and limited to the grantee unless a contrary intention clearly appears.  The language of the statute before us is personal, not attached to the property.  It enacts that " said company;" not " said company, its successors or assigns," shall not be required to bear any part of the expense of repaving the streets.

The other questions presented on this appeal are disposed of by our decision in the *Conway Case* (*supra*) and, therefore, do not require examination.

I vote for reversal of the judgments below and for the granting of a new trial, costs to abide event.

GRAY, J. (dissenting).  I am of the opinion that the transactions in 1869 between the defendant, the city and the state resulted in a valid contract, of which chapter 34 of the Laws of 1869 was the complete expression and final sanction, and that it was beyond the power of the legislature to impair its obligations by subsequent legislation.  Neither the provisions of the General Railroad Act of 1884, nor those of the Railroad Law of 1890, could avail to recall, or to modify, the grant of the right of exemption from the burdens of future assessments for improving the streets of the city of Rochester.  As a vested right under the contract, it was within the protection of the State and Federal Constitutions.  For 28 years the city observed this contract and, upon two occasions, by ordinances, recognized the right it had conferred.  It forbore to request, or to require of, the Rochester City & Brighton

Railroad Company, or the defendant, that either should bear any portion of the expenses of street improvements in streets, where tracks had been laid prior to 1884, and, doubtless, would have continued to maintain that attitude of respect for its agreement, had not our decision in the case of *Conway* v. *City of Rochester*, (157 N. Y. 33), been regarded as warranting a different view of the relations established by the resolution and legislation of 1869. I think, too, that a precise consideration of the General Railroad Act of 1884, under which the defendant was incorporated and upon whose provisions the plaintiff's claim is, mainly, rested, aids in the conclusion that it was not necessarily applicable, in the respect we are considering, to a street railroad company, whose street franchises and construction antedated 1884.

The decision in the *Conway* case, in 1898, could not affect what rights were possessed by the defendant based upon the legislation of 1869 ; for it was not a party to, nor represented in, that action. In that case, the plaintiff, an abutting owner upon a street in which the Rochester Railway Company was operating its road, sought to prevent the city of Rochester from awarding any contract for the pavement of the street, until it had required the company to do the paving within, and two feet outside of, its tracks, under the provisions of section 98 of the Railroad Law. The questions certified to this court in that case were whether the plaintiff and the other abutting owners were assessable for the cost of that portion of the new pavement ; or whether the municipal authorities were not obliged to require the railway company to do that much of the proposed work. It is true that the act of 1869 was relied upon, in the argument for the city, as exempting the company ; but it was not discussed in the opinion. What we considered and determined was the nature of the statutory direction to the local authorities, with respect to a street railway company, when they exercised their power to repave a street, within which it was in operation. We held it to be mandatory upon them to require the company to do the particular portion of the work specified in the statute and the

argument based upon the case of *Gilmore* v. *City of Utica*, (121 N. Y. 561), was answered by pointing out that there the statute was permissive and left it discretionary with the municipal authorities to require the street railway company to bear a portion of the expense of the repaving. The contractual status of the defendant and the city, if at all in mind, was not shown, as it has been here; otherwise than as the act of 1869 might be deemed to disclose it. What the defendant might claim and establish for itself was not before us. There was no complaint of an unconstitutional invasion of any contract right in the application of the General Railroad Acts and when the objection of the unconstitutionality of a law is not raised by a party, who has the right to make it, the court will not raise it. (*People* v. *B., F. & C. I. Ry. Co.,* 89 N. Y. 75, 92.) That the defendant might invoke the constitutional guarantees, when it was sought to deprive it of the enjoyment of a right secured by contract, or that it might waive them, was not a matter of assumption for the court.

That there existed the essentials to a valid contract, I regard as clear upon the facts. There was nothing to take it out of the application of those legal principles, which govern transactions between persons. The grant of a right to execute the corporate purpose was made upon the agreement of the grantee to comply with certain conditions. A consideration moved each party to the transaction and there was performance. The situation is to be considered, which existed at the time when the convention between the defendant's predecessor in interest, the Rochester City & Brighton Railroad Company, and the city of Rochester was reached; as well as what was then agreed upon between them and, eventually, sanctioned by the act of 1869. The Rochester City & Brighton Railroad Company was organized, in 1862, under the General Railroad Act of 1850, as a horse railroad company. The act of 1854 had been passed, (Chap. 140, Laws of 1854), to regulate the construction of railroads in cities; but its application, by its terms, was to such as commenced and ended

within the city. The company constructed and operated a
railroad between points on either side of the city of Roches-
ter; passing to them through the streets of the city. Upon
its incorporation, the common council of the city gave its
consent by resolution, as required by the act of 1850, to the
construction of a street surface railroad upon the routes in
the city designated, with various stipulations and conditions.
One of them required that the company should improve with
suitable materials, as might be required by the common coun-
cil, within its tracks and for two feet and four inches outside
thereof, and that it should keep so much of the surface of the
street in good repair. It authorized the company to collect
a fare of five cents from every person; except children under
five years of age, who should ride free. This resolution,
being accepted and acted upon, undoubtedly, constituted a
valid contract between the company and the city, so far as
the consent was given to construction and operation; just as
there would have been a contract had the incorporation been
one under the act of 1854. (*People* v. *Sturtevant*, 9 N. Y.
273; *Milhau* v. *Sharp*, 27 ib. 611, 620; *Potter* v. *Collis*,
156 ib. 16.). But that the common council could do more
than consent and that it could confer rights and make stipu-
lations, in the absence of other legislative authority, was, at
least, doubtful. In that situation of affairs, however the
status of contract may be regarded, the company, in 1868,
failed and its franchises and properties came, through a fore-
closure sale, into the possession of a successor bearing the
same name. Then it was that negotiations with the city to
be relieved of the onerous conditions of the resolution of
1862 resulted in an amendatory ordinance; by which the
company was only required to lay its tracks even with the
surface of the streets and to put the surface of the streets,
inside the rails and for one foot outside thereof, in good
and thorough repair, under the direction of the committee
of the common council. It was provided that, thereafter,
it should keep the streets in good repair inside its tracks
and between the rails during the term of five years, and that

it should be exempt, for that period of time, from any part of the expense of a new, or permanent, street improvement. Another requirement of the original ordinance was amended, so as to reduce the fare for children between twelve and five years of age to three cents. Both parties, however, subsequently, united in the submission to the legislature of a proposed law, legalizing the action of the common council, and the passage of chapter 34 of the Laws of 1869, in question, was the result. This act empowered the company to maintain and operate a railroad in all of the city streets, in which it had a track, or which the municipal authorities might permit it to enter upon. It authorized the collection of a fare of five cents from a passenger over twelve years of age, reduced the fare of a passenger between twelve and five years of age to three cents and provided that children under five might ride free. It required the company to " put, keep and maintain the surface of the streets inside the rails of its tracks, in good and thorough repair, under the direction of the committee of the common council," and exempted it from making, or bearing any part of the expense of, permanent street improvement, beyond conforming its rails to the grade. This act was an express grant of a franchise and it removed what doubt may have existed as to the company's legal status ; or as to its rights and powers under the General Railroad Act of 1850, or under the resolution of the common council. It was a grant upon conditions ; which was accepted and acted upon by the extension of the company's railroad into other streets, with the expenditure of large sums of money. It was more than a mere validation of the municipal ordinance ; which was merged in the comprehensive and higher legislative enactment. There was a compact with the state, to which the city had assented ; whereby franchises and powers were conferred upon the corporation, as of original grant. The corporation was obliged to carry passengers between twelve and five years of age for three cents, instead of five ; it was to keep the surface of the streets inside the rails of its track, in good and thorough repair, without limita-

tion of time and it was exempted from the burden of the expense of future street pavements. There was no reservation of any right to alter the conditions, or to repeal the grant of an exemption, and no such right existed under the Constitution, or in the statutes, of the state; for whatever reservation of powers was contained therein related to the alteration, or repeal, of general laws, or of special acts, passed for the formation of corporations; to the alteration and repeal of charters; or to the annulment and dissolution of corporations. (Constitution, art. VIII, sec. 1; R. S. chap. 18, title 3, sec. 8; chap. 140, Laws of 1850, sec. 48.) Such reservations of power did not touch the case of a contract right, which had become property. (*People* v. *O'Brien*, 111 N. Y. 1, 44; *Albany Northern R. R. Co.* v. *Brownell*, 24 ib. 345.) This contract, therefore, was not subject to recall, or to modification. The covenant was implied on the part of the government not to invade the rights vested and on the part of the grantee to execute the duties and conditions prescribed in the grant. The government could not do any act to impair the grant without breach of the contract. (3 Kent, 458; *Dartmouth College* v. *Woodward*, 4 Wheat. 519; *People* v. *Sturtevant*, 9 N. Y. 273.) The city and the railroad company regarded this legislation as constituting a contract, inviolable in its provisions, and gave practical construction to it from 1869 to 1897. The company extended its operations and it and the defendant, as its successor in interest, have performed what was required of them; while the city never questioned the company's right of exemption from the burden of the expense of permanent street improvements, until compelled thereto by the action of abutting property owners. Nor was the provision of the act of 1869 in the nature of a gratuitous exemption from taxation, as it is argued. The company was not relieved from taxation; it was relieved of an obligation, with which its grant from the city had been burdened, in consideration of its agreement, during its corporate existence, to do the things required of it by the act. It was not "a mere continuing gratuity, which the Legislature was at liberty to terminate and withdraw at

any time ; " as the legislative enactment was termed in *Stanislaus Co.* v. *San Joaquin, etc., Co.*, (192 U. S. 201). If it were merely that, there would be lacking the contractual essential of consideration. In return for the grant of the franchise by the state, the defendant agreed to charge a lesser rate of fare than before authorized for its passengers under the age of twelve, and to *permanently* keep the street surface in good repair. The public was the gainer by the provisions of the act, in those respects, as in the encouragement given to the extension by the company of its railroad tracks throughout the city. In view of the protest and negotiations of the reorganized company for a less onerous franchise ; the resolution of the common council assenting to a modification, upon conditions to be accepted by the company ; the legislative enactment, ratifying the action of the city and conferring, directly, a franchise and an exemption from the previous burden attaching to its right to operate its road, and the action of the company in accepting the new rights and powers and in expending large sums of money in reliance thereupon, the argument that there was no contract, founded upon a consideration and beyond the power of the legislature to affect, or to recall, seems quite untenable. The doctrine of the cases of *Binninger* v. *City of New York*, (177 N. Y. 199), and of *Village of Mechanicville* v. *S. & M. Street Ry. Co.*, (174 ib. 507), has no application. In those cases, the question was one of the power of the municipalities, from which the railroad companies had received grants of rights upon conditions as to the kind of pavement to be laid within and outside of their tracks, to require the laying of a different pavement. In the *Binninger* case, the grant, or contract, relied upon was questionable, because without the sanction of the legislature, (having been made in 1853), and the decision went upon the ground that it was charter legislation. In the second case, the decision below, which was affirmed here without opinion, held, substantially, that the condition of the franchise was of a nature that required the pavement to be such " as made a good condition," or of the kind adopted by the village. In

neither case was there the legislative sanction of the contract, under which the railroad company derived rights; nor was the question now before us raised.

There being, therefore, a valid contract with the city, which was confirmed by the state in a legislative enactment, of itself conferring upon the company its franchises and rights and an exemption from the burden of the expense of future permanent street improvements, upon the consideration of acts to be performed by the railroad company, this defendant, in February, 1890, succeeded, by lease, to its properties, rights, privileges and franchises " without change, or diminution, as they were before held and enjoyed," by virtue of the provisions of the statute authorizing the leasing. (Chap. 503, Laws of 1879, sec. 1.) The defendant, thereupon, proceeded to reconstruct its entire railroad for operation by electric power, or the " trolley system," instead of by horse power; permission for which had been granted by the municipal authorities to the defendant's lessor and by the state railroad commissioners to the defendant, and there were expended four millions of dollars in the work. It was expressly found, upon the evidence, that this expenditure was made in reliance upon the provisions of the act of 1869 and upon the agreement with the city, relating to the right to change the motive power. The agreement referred to had been made just prior to the lease and provided, *inter alia*, for the company's compliance with ordinances relating to " the *general repairs* of the streets within and for two feet outside and adjoining the company's tracks." But repairs, it is to be observed, only, had been required by the act of 1869.

The contractual rights vested in the Rochester City & Brighton Railroad Company through the act of 1869 were property, of which the defendant became possessed; and it was not competent for the legislature to affect, or to impair, them. The contract existed, which the legislature had validated and re-enacted, and it was within the protection of the Federal and State Constitutions. There was neither an express, nor an implied, right reserved to the state to alter, or to repeal,

it. The obligation upon the city to observe the provision for exemption as to future expenses of street improvements was as permanent and unalterable, as was the obligation upon the company, during its corporate life, to carry passengers between certain ages for a reduced fare and to keep the street surface within its tracks in thorough repair. The discussion by the United States Supreme Court, in the cases of *New Jersey* v. *Yard*, (95 U. S. 104), and of *Stearns* v. *Minnesota*, (179 ib. 223), is much in point upon the power of the legislature of a state to alter, or to repeal, contracts created by legislative enactments and granting exemptions in consideration of the performance of some obligation imposed upon the grantee.

The General Railroad Act of 1884, under which the defendant was incorporated, should not be construed as applying to existing railroad systems, whose tracks were con structed prior to 1884, and its plain provisions do not require such a construction. Although organized under the act of 1884, the defendant took over the franchises and rights of its lessor, as they were previously enjoyed, and operated the rail-road property by right thereof and not·under its act of incorporation. In so far as its lessor had constructed extensions of its tracks, under consents obtained from the·municipal authorities, *after* the passage of the general act of 1884, to that extent, the provisions of that act would control in their operation. But, as to previously constructed tracks, their operation would be within the provisions of the legislative contract of 1869. It may be observed that the requirement of section 9 of the act of 1884, as to a corporation constructing, extending, or operating, a railroad constructed, or extended, under the provisions of the act, is to " have and keep in *permanent repair* the portion of every street " etc.; which would be, indeed, but the. obligation resting upon the defendant, as les-see, and would impose no greater burden, apparently. But section 18 of the act expressly provides that nothing therein " shall interfere with, or repeal, or invalidate, any rights here-tofore acquired under the laws of this state by any horse rail-road company, or affect, or repeal, any right of any existing

street surface railroad company to . . . operate . . . its road in accordance with the terms and provisions of its charter " etc. The consents, under which the extensions were granted to the defendant's lessor, were upon the condition, as required by the act to be expressed, in such a case, " that the provisions of chapter 252 of the laws of 1884 *pertinent thereto* shall be complied with," and those granted to the defendant since the lease were upon the condition " that the provisions of Article IV of the Railroad Law *pertinent thereto* shall be complied with." That new extensions of tracks and the operation of the railroad franchise therewith should bring the corporation within the government of the provisions of the General Railroad Acts is not unreasonable and I do not understand the defendant to raise any question as to that.

As to the Railroad Law of 1890, and its amendments, we must assume, in view of our decision in the *Conway Case*, (*supra*); that section 90, in making its provisions applicable " to every corporation, which under the provisions thereof, or of any other law, has constructed, or shall construct or operate, etc., a street surface railroad " etc., is unconstitutional and void as to the defendant. The argument is that the defendant has waived, or " contracted away," any claim to exemption, in extending its railroad into various streets under consents, which are so conditioned as to require compliance with the provisions of article 4 of the Railroad Law, and in the proceedings for the confirmation of the location of its tracks. With respect to the defendant's extensions of its railroad under the Railroad Law of 1890, I am of the opinion that it is entitled to insist upon the limitation that only such of the provisions of article IV apply as, in the language of the statute, are " pertinent thereto" and that the provision as to street repairs, if more is required of the company than it is already obligated to do, is not pertinent as to tracks laid under franchises, prior to 1884; because of the exemption contained in the act of 1869. Furthermore, I think that the defendant's undertaking, in obtaining, and in carrying out, the extensions of its road, should be regarded as having relation only to so

much of the railroad system, as was constructed and put into operation after the passage of the General Act of 1884, and not as an agreement to waive what benefit, or privilege, had been secured through the act of 1869 to its lessor. There were no words of waiver and there is nothing to justify an implication of such. What the defendant applied for was the franchise to extend an existing road into other streets and the consents had reference to such extensions, and the terms upon which they were given brought the operation of such new tracks within the requirements of the General Railroad Law.

As to the proceedings for the confirmation by the municipal authorities of the location of the tracks of the companies, under whose franchises the defendant was operating, I am unable to find any agreement to waive the protection of the Constitution as to any right secured by the act of 1869. The defendant's petition set forth the lack of formality in fixing the location of the tracks in the streets, notwithstanding that the rights had been granted and that the consents of the property owners had been obtained, and a formal resolution of ratification and approval was prayed for. The common council passed an ordinance directing a contract to be prepared, containing the terms upon which the prayer of the petition would be granted, which was to be executed by both parties. The contract, as drawn and executed, ratified the location of the railroad as then operated and stated the conditions to be observed. They were, in brief, that the provisions of article IV of the Railroad Law should be complied with; that the company should furnish transportation to two policemen at a time upon each car and should issue tickets to detectives, and that it should furnish like transportation to two firemen on each car. It was then, finally, provided by a clause of the contract that " all the provisions of any agreement between the city of Rochester and any street railroad company and all ordinances, resolutions, grants and consents heretofore passed by said city, with reference to the construction, maintenance, or operation of street railroads within said city, shall

9

remain in full and binding force and these resolutions shall not be construed as . . . repealing, modifying, or changing in any respect, the terms or provisions of any agreement previously entered into between said city and any street railroad company." There appear to be two sufficient answers to the claim of the plaintiff that by this agreement the defendant had " contracted away " the right to exemption conferred by the act of 1869. The provision for compliance with article IV of the Railroad Law was but the formal insertion of a condition, which the Railroad Law required to be inserted in grants, consents, or franchises, and it is qualified, as a general provision, by the final and saving clause of the contract. This was but a simple contract between the parties, which had for its purpose the settlement of any question about the actual location of the tracks in the streets. The city was asked for no franchise, nor did it grant any. The franchises existed and were being lawfully operated by the defendant. The contract, while desired by the defendant to prevent any question as to the proper location of its tracks, obtained for the city the right to have members of its police and fire departments carried free. But the final clause clearly operated to preserve whatever contractual rights the defendant had become possessed of under the lease, and it expressly provided that the resolution should not be considered as repealing, or changing, any agreement previously entered into. There would appear to be little if any reason for the insertion of this saving clause, unless to qualify the broad application of the provisions of article IV of the Railroad Law.

Without further discussion of the questions, I think enough has been said to show that the defendant is entitled to insist upon the right to be exempted from the burden of the expense of any new, or permanent, improvements in streets, wherein tracks were constructed and operated under franchises prior to 1884. I, therefore, advise the affirmance of the judgment.

Haight, Vann and Werner, JJ., concur with Cullen, Ch. J.; O'Brien and Bartlett, JJ., concur with Gray, J.

Judgment reversed, etc.